UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:26-cv-01653-MBK | Date | November 19, 2026 |
| Title | Dung Van Trieu v. Markwayne Mullin, et al. | | |

| | |
|---|---|
| Present: The Honorable | Michael B. Kaufman, U.S. Magistrate Judge |

| | |
|---|---|
| James Muñoz | n/a |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Petitioner: | Attorneys Present for Respondent: |
| None present | None present |

**Proceedings:** ORDER GRANTING PETITIONER'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER (DKT. 17) AND ORDERING PETITIONER'S RELEASE

Pending before the Court is Petitioner Dung Van Trieu's Application for a Temporary Restraining Order ("TRO"). Dkt. 17. For the reasons that follow, the Court grants a TRO requiring Petitioner's immediate release from custody.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Dung Van Trieu, a native and citizen of Vietnam, is in the custody of the Department of Homeland Security ("DHS") at the Adelanto Detention Facility. Dkt. 1 at 2; Dkt. 25-1 at 1. Petitioner immigrated to the United States in 1991 as a lawful permanent resident. Dkt. 1 at 5. Following a 2004 conviction, Petitioner was ordered removed from the United States but later released on an order of supervision ("OSUP"). *Id.*; Dkt. 1-1. Since that time, Petitioner has remained in the United States with his family and has fully complied with his conditions of supervision. Dkt. 1 at 5-6; Dkt. 1-2.

On March 5, 2026, immigration authorities arrested Petitioner and detained him for the purported purpose of facilitating his removal to Vietnam. Dkt. 1 at 6; Dkt. 9. On April 5, 2026, Petitioner filed a petition for writ of habeas corpus. Dkt. 1. On April 17, 2026, this Court granted the petition and ordered Petitioner's release. The Court concluded that (1) the Government had not demonstrated there was a significant likelihood of Petitioner's removal to Vietnam in the reasonably foreseeable future; and (2) the Government failed to follow the required procedures for revoking Petitioner's OSUP. *See* Dkt. 14. In its order, this Court prohibited the Government from re-detaining Petitioner without obtaining a travel document for his removal and providing him adequate notice, an interview, and an opportunity to be heard. *Id.* at 19.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:26-cv-01653-MBK | Date | November 19, 2026 |
| Title | Dung Van Trieu v. Markwayne Mullin, et al. | | |

On October 13, 2026, Immigration and Customs Enforcement ("ICE") issued a letter directing Petitioner to appear at an ICE office in Santa Ana, California, on October 21, 2026, for a "Case Review / Final Order" and to bring his "Issued Case Documents." Dkt. 20 at 3-4. The letter did not indicate that ICE intended to revoke Petitioner's OSUP or that it had obtained a travel document for his removal. *Id.* ICE also did not provide notice of the appointment to Petitioner's counsel. *Id.* at 4; *see also* Dkt. 19-1 at 3 (Notice of Revocation and Release with an unchecked option box for "cc: Attorney of Record or Designated Representative").

On October 21, 2026, Petitioner appeared as instructed at the ICE office in Santa Ana. Dkt. 20 at 3-4. ICE officers arrested Petitioner and revoked his OSUP. *Id.* Petitioner alleges that the officers informed him that they had obtained a travel document for him, but did not produce the document or identify the government that issued it. Dkt. 17 at 6. The ICE officers served Petitioner with a Notice of Revocation of Release that indicated that ICE had obtained a travel document for his removal and his removal would take place no later than March 8, 2027. Dkt. 19-1 at 2. The officers also completed a form stating that they conducted an "informal interview" to revoke Petitioner's OSUP and that Petitioner did not make an oral or written response to the Notice of Revocation. *Id.* at 4.

That same date, on October 21, 2026, Petitioner filed the instant TRO application. Dkt. 17. Petitioner alleges that Respondents violated the Court's order and judgment by re-detaining him without obtaining a travel document and following the revocation procedures in 8 C.F.R. § 241.13(i)(3). *Id.* at 8. Petitioner argues that he is likely to succeed on the merits of his claims, he would suffer irreparable harm because his dependent family members need his support, and the balance of equities and the public interest favor relief. *Id.* at 9-10. The Court ordered Respondents to respond to the TRO application by October 22, 2026, and ordered Respondents not to transfer Petitioner outside the Central District of California pending the resolution of the TRO application. Dkt. 18.

In their response, Respondents contend Petitioner's re-detention was consistent with the Court's April 2026 release order. Dkt. 19 at 2-3. Respondents attached a copy of the Notice of Revocation of Release, an ICE officer statement of an informal interview, and a scan of a Vietnamese passport for Petitioner. Dkt. 19-1; Dkt. 19-2. Petitioner filed his reply on October 23, 2026. Dkt. 20. Among other issues, Petitioner disputes that he received an interview prior to the revocation of his OSUP. Dkt. 20 at 4-5. Petitioner observes that Respondents' ICE informal interview form states "neither the time nor the duration of any interview," reflected "neither the language employed nor the presence of an interpreter," and "[t]he section of the interview form reserved for Petitioner's 'oral

response' is blank." *Id.* On October 26, 2026, Petitioner filed additional exhibits in support of his TRO application, including medical documents related to Petitioner's role as the primary caretaker for his elderly mother and disabled sister as part of California's In-Home Supportive Services ("IHSS") program. Dkt. 22.

The Court held a hearing on the TRO application on October 27, 2026. Dkt. 24. At the hearing, the Court inquired about the circumstances of the revocation interview, including whether it was conducted in the Vietnamese language. After Respondents' counsel indicated her belief that the interview was conducted in Vietnamese, the Court authorized Respondents to file a supplement brief to substantiate that interpretation was provided. The Court also inquired whether ICE would consider releasing Petitioner for a brief period to allow him to get his affairs in order prior to his removal to Vietnam. Respondents' counsel indicated that she had "posed the same inquiry to ICE upon receipt of Petitioner's supplemental exhibits in support of his request for a temporary restraining order, and that the agency indicated that it would be willing to entertain a request for a brief parole period of seven days in order for Petitioner to get his affairs in order." Dkt. 27 at 4. Accordingly, the Court ordered Petitioner to file a status report within seven days regarding the status of the request for temporary release. Dkt. 24.

Following the hearing, on October 27, 2026, Respondents submitted a copy of the warrant served on Petitioner during his arrest, which indicates that the warrant was read to Petitioner in the Vietnamese language. Dkt. 23-1. Although Respondents did not provide proof that the interview was conducted in Vietnamese, they observed that "[t]he same deportation officer identified in the Warrant for Arrest conducted Petitioner's informal interview on October 21, 2026." Dkt. 23 at 2.

On November 4, 2026, Petitioner filed a status report. Dkt. 25. Petitioner states that he submitted, by email, a request for temporary release to ICE and Respondents' counsel on October 29, 2026. *Id.* at 2. Petitioner proposed a temporary release of at least forty-five days before his removal to arrange for "the care of his eighty-eight-year-old mother and his disabled sister," subject to the conditions of his prior OSUP, an GPS ankle monitor, and that Petitioner would surrender to ICE at the conclusion of the release period. *Id.* Petitioner indicated that Respondents had not responded to his request to date. *Id.* at 3. The Court subsequently ordered Respondents to file a response to the status report on or before November 11, 2026. Dkt. 26.

Respondents filed a timely response to the status report on November 10, 2026. Dkt. 27. Respondents first corrected Petitioner's statement that Respondents' counsel

indicated ICE would consider a release "for a period of weeks to months," when in fact, counsel stated only that ICE would consider a release for a period of seven days. *Id.* at 2. Respondents' counsel nonetheless had forwarded Petitioner's October 29, 2026, request for to relevant officials at ICE. *Id.* at 2. However, on November 10, 2026, ICE advised Respondents' counsel that the agency had denied Petitioner's request for parole. *Id.* at 2-3.

Petitioner filed a reply on November 17, 2026, in which he re-iterated his claims for temporary relief. Dkt. 28.

## I. LEGAL STANDARD

The standard for issuing a temporary restraining order is the same as that for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To prevail on a motion for temporary relief, the movant must establish that (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm absent the temporary restraining order, (3) the balance of equities tips in his favor, and (4) a temporary restraining order is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Meinecke v. City of Seattle*, 99 F.4th 514, 521 (9th Cir. 2024). Where the non-movant is a government entity, "the third and fourth factors . . . merge." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 695 (9th Cir. 2023) (en banc). In the Ninth Circuit, the *Winter* factors may be evaluated on a sliding scale such that "a stronger showing of one element may offset a weaker showing of another." *Id.* at 684 (citation omitted). "When the balance of equities 'tips sharply in the plaintiff's favor,' the plaintiff must raise only 'serious questions' on the merits—a lesser showing than likelihood of success." *Id.* (citation omitted). "A preliminary injunction is an extraordinary remedy never awarded as of right," but rather only "upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22, 24.

## II. DISCUSSION

The Court finds that Petitioner is entitled to a temporary restraining order requiring his release.

### A. Likelihood of Success

The first factor, "likelihood of success on the merits[,] is the most important factor—and even more so when a constitutional injury is alleged." *Matsumoto v. Labrador*, 122 F.4th 787, 804 (9th Cir. 2024). The Court concludes that this factor favors Petitioner.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:26-cv-01653-MBK | Date | November 19, 2026 |
| Title | Dung Van Trieu v. Markwayne Mullin, et al. | | |

Petitioner claims that Respondents' revocation of his OSUP violated this Court's April 17, 2026, release order. The order prohibited Respondents from re-detaining Petitioner "unless Respondents obtain a travel document for his removal and provided him adequate notice, an interview, and an opportunity to be heard." Dkt. 14 at 19. The Court imposed these requirements based on its finding that Respondents had previously unlawfully re-detained Petitioner without demonstrating that there was a significant likelihood of Petitioner's removal in the reasonably foreseeable future. *Id*. at 11-17 (citing 8 C.F.R. § 241.13(i)(2)). Respondents had also failed to provide Petitioner the required procedures for revoking his OSUP—namely notice, an interview, and an opportunity to contest the basis for revocation. *Id*. at 17-18 (citing 8 C.F.R. § 241.13(i)(2)).

The Court finds that Petitioner has shown a likelihood of success on his claim that Respondents, again, failed to follow the proper procedures for revoking Petitioner's OSUP and therefore violated this Court's order. Unlike with Petitioner's initial re-detention, Respondents appear to have completed and served the correct forms to revoke Petitioner's OSUP: a "Notice of Revocation of Release" (Form 71-091) and "Alien Informal Interview Upon Revocation of Order of Supervision" (Form 71-090). *See* Dkt. 19-1. However, the forms are not "an empty formality." *Bekhoev v. Marin*, No. 5:26-cv-00612-MBK, 2026 WL 1045058, at *3 (C.D. Cal. Apr. 8, 2026). Rather, they provide the "basis for the Government's determination that" an OSUP should be revoked "—and the noncitizen should be detained—and affords the noncitizen notice and an opportunity to respond to the Governments asserted basis for" revocation. *Id*.

But, here, it appears that Respondents failed to provide Petitioner with meaningful notice and an opportunity to be heard before he was re-detained. Petitioner alleges—and Respondents do not dispute—that ICE instructed Petitioner to report on October 21, 2026, for a "Case Review" and did not disclose that they had already obtained a travel document for Petitioner or indicate that his OSUP would be revoked. Dkt. 20 at 3-4. Even though Petitioner had retained counsel, ICE did not notify counsel of the appointment. *Id*. When Petitioner appeared as instructed, ICE officers immediately informed him that his OSUP would be revoked and that he would be taken into custody. *Id*. Although Respondents maintain that an informal interview was conducted and translated into Vietnamese, (Dkt. 23), they have provided no proof that interpretation was in fact provided.

Under these circumstances, the Court concludes that Petitioner has shown a likelihood of success on his claim that Respondents failed to provide "adequate" notice and an opportunity to be heard. An "elementary and fundamental requirement" of due process is "notice reasonably calculated, under all the circumstances, to apprise interested parties

of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also United States v. Rivera-Valdes*, 157 F.4th 978, 988 (9th Cir. 2025) (en banc) (recognizing that "the notice afforded to noncitizens subject to removal is governed by the due process standards articulated in" *Mullane*). While the adequacy of notice and an opportunity to be heard will necessarily vary with the circumstances, *Rivera-Valdes*, 157 F.4th at 985, Respondents' efforts here appear insufficient under any reasonable standard. Respondents did not provide any advanced notice of the true purpose of Petitioner's appointment, failed to notify Respondents' counsel of the appointment, and have not provided proof that the notice of the revocation of Petitioner's OSUP and interview were conducted in the Vietnamese language. *See Perez-Lastor v. I.N.S.*, 208 F.3d 773, 778 (9th Cir. 2000) ("It is long-settled that a competent translation is fundamental to a full and fair hearing. If an alien does not speak English, deportation proceedings must be translated into a language the alien understands."). As Petitioner argues, it appears that Respondents' conduct "served to secure custody; it did not permit a response." Dkt. 20 at 4. Indeed, Respondents' records reflect that Petitioner made no statement or response to the notice of revocation, (Dkt. 19-1), even though Petitioner plainly objected to his re-detention. Petitioner, through counsel, filed the instant application hours after he was taken into custody.

The Court also concludes that Petitioner has shown a likelihood of success on his claim that his detention is unnecessary to accomplish his removal. Dkt. 22 at 2. This Court previously determined that Petitioner's detention was authorized, if at all, under 8 U.S.C. § 1231(a)(6) (providing that the Government "may" detain certain noncitizens beyond the 90-day removal period). Dkt. 14 at 4-5. Detention under Section 1231(a)(6) serves two permissible purposes: ensuring a noncitizen's appearance at removal proceedings or removal, and preventing danger to the community. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Here, it does not appear that Petitioner's detention bears a "reasonable relation" to either permissible purpose. *Id.* (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)). Respondents claim that they took Petitioner into custody to effectuate his removal, but they did not have a flight or other travel plans confirmed for Petitioner. His travel document authorizes his return to Vietnam through March 8, 2027. Respondents do not explain why they could not require Petitioner to arrange his own travel to Vietnam prior to that date or, if they intend to secure Petitioner's travel arrangements themselves, order Petitioner to surrender shortly before his return flight. *See Diallo v. Joyce*, 817 F. Supp. 3d 202, 208 (S.D.N.Y. 2025). Petitioner has complied with the conditions of his supervision for more than two decades, including by reporting to ICE as instructed for the two appointments at which ICE re-detained him in March and October 2026. In light of this history, it does not appear that Petitioner's re-detention—without any imminent

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:26-cv-01653-MBK | Date | November 19, 2026 |
| Title | Dung Van Trieu v. Markwayne Mullin, et al. | | |

travel plans—was necessary to effectuate his removal and therefore permissible under Section 1231(a)(6). *See Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 949 (9th Cir. 2008) ("There is a difference between detention being authorized and being necessary as to any particular person.").

**B. Irreparable Harm**

The second preliminary relief factor also favors Petitioner. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). "[U]nlawful detention certainly constitutes 'extreme or very serious'" injury which "is not compensable in damages." *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017). Moreover, the Ninth Circuit has recognized the "irreparable harms imposed on anyone subject to immigration detention," including "subpar medical and psychiatric care in ICE detention facilities." *Id.* at 995.

Apart from the irreparable harm Petitioner has suffered during his unlawful detention, his family has also faced severe consequences. *See id.* (discussing the "collateral harms" of detention to family members). Petitioner is the primary caregiver for his elderly mother and disabled sister. *See* Dkt. 22. During Petitioner's detention, Petitioner's family has been deprived of their primary support and Petitioner has been unable to help find alternative caregiving options. *Id.*

**C. Balance of Equities and Public Interest**

Finally, the balance of equities and public interest "tips sharply" in favor of Petitioner. "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Fellowship of Christian Athletes*, 82 F.4th at 695 (citation omitted); *see also Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable or in the public's interest to allow the [government] . . . to violate the requirements of federal law." (citation omitted)). The Government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Naturalization Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).

In sum, the Court finds the preliminary relief factors all support Petitioner's application for a TRO: Petitioner is likely to succeed on his claims, he will suffer irreparable harm from his likely unlawful confinement absent relief, and the balance of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:26-cv-01653-MBK | Date | November 19, 2026 |
|---|---|---|---|
| Title | Dung Van Trieu v. Markwayne Mullin, et al. | | |

equities and public interest favor an order that will enjoin Respondents' likely unconstitutional actions.

**D. Bond**

Rule 65(c) requires that, prior to granting injunctive relief, the Court require a movant to pay security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (citation omitted). "The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id.* (citation omitted); *see also Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 883 (9th Cir. 2003) (discussing that the mandatory language of Rule 65(c) does not "absolve[ ] the party affected by the injunction from its obligation of presenting evidence that a bond is needed, so that the district court is afforded an opportunity to exercise its discretion in setting the amount of the bond").

Accordingly, the Court waives the bond requirement here, as it is unlikely that the government will incur any significant cost and requiring a bond "would have a negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other members of the public." *Baca v. Moreno Valley Unified Sch. Dist.*, 936 F. Supp. 719, 738 (C.D. Cal. 1996) (citation omitted).

**III. CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Petitioner's application for a temporary restraining order. The Court **ORDERS** as follows:

1. Respondents shall release Petitioner Dung Van Trieu, (A# 042-534-166), under the terms and conditions of his prior OSUP.
2. Respondents are ordered to show cause why a preliminary injunction should not issue on or before November 27, 2026. Petitioner may file a reply on or before November 30, 2026. The Court will determine whether to set a hearing on the OSC after reviewing the parties' briefing.

3. Alternatively, the parties may stipulate to extend the TRO pending the briefing on Petitioner's motion to enforce the judgment.
4. Absent further order, this TRO shall take immediate effect and expires at 5:00 p.m. on December 3, 2026. The TRO may be extended for good cause or upon Respondents' consent.
5. Nothing in this Order precludes Respondents from arranging travel plans for Petitioner or otherwise facilitating Petitioner's removal to Vietnam. If Respondents believe that Petitioner's detention is warranted to effectuate his removal, they may make that showing in their response to the OSC or by seeking appropriate relief from this Order.

**IT IS SO ORDERED.**